## THE SAMUEL E. SPRING.[1]

*(District Court, D. Massachusetts.   June 8, 1886.)*

1. SEAMEN—WAGES—ADVANCE WAGES—ACT TWENTY-SIXTH JUNE, 1884, (23 ST. 53)—DINGLEY ACT CONSTRUED—PROVINCE OF COURT IN CONSTRUCTION OF STATUTES.

   The crew of the bark S., on shipment, signed articles made out in the usual way, and containing, *inter alia*, the rate of wages, but without any provision for the payment of any portion of the same in advance. Contemporaneously therewith they made a parol agreement with the shipping master, both as to the rate of wages and the payment of an advance. The difference between the rate of wages named in the shipping articles and that verbally agreed upon was the precise amount of the advance wages. Both agreements were made with the consent of the owners of the vessel, and were fully understood by the crew, and the amounts agreed to be advanced were paid to them upon shipment. At the termination of the voyage the crew were tendered payment of their wages as due by the shipping articles without any deduction on account of payments made in advance. All of the crew, with the exception of the second mate, accepted this offer, and signed a release of all claims against vessel, master, and owners. They, together with the second mate, shortly afterwards filed a libel for the recovery of the amount of wages stipulated for by the verbal agreement, without any deduction for the amounts paid to them in advance. *Held,* that the act of twenty-sixth June, 1884, (23 St. 53,) declares in express terms that the payment of advance wages shall, in no case, absolve the owner, master, or vessel from full payment of wages, or be a defense to a suit for their recovery after they are earned; that it would be an absurd, as well as a palpable disregard of legislative intent, to hold that the law can be evaded by merely having seamen sign fictitious shipping articles, which do not express the rate of wages actually agreed upon and intended to be paid. The second mate is entitled to recover the full amount of his wages as verbally agreed upon, without any deduction for the advance paid to him at the time of shipment. As to the rest of the crew, the

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

libel must be dismissed, there being nothing in the nature of the claim to render it incapable of being released, and it appearing evident that the parties when they signed the release intended to be bound by it.

**2. STATUTES—CONSTRUCTION—DOUBTFUL WORDS.**

The rule undoubtedly is that statutes are to receive a reasonable construction, and doubtful words and phrases are to be so construed, if possible, as not to produce mischievous results. But when the words used are plain and unambiguous, there is no room for construction,—nothing is left for the court but to give them their full effect.

In Admiralty.

*T. J. Morrison,* for libelants.

*J. M. Browne,* for claimants.

NELSON, J. The questions in this case arise under section 10 of the act of June 26, 1884, (23 St. 53,) known as the "Dingley Act," which enacts "that it shall be, and is hereby, made unlawful in any case to pay any seaman wages before leaving the port at which such seaman may be engaged, in advance of the time when he has actually earned the same, or to pay such advance wages to any other person. * * * The payment of such advance wages * * * shall in no case, except as hereinafter provided, absolve the vessel, or the master or owner thereof, from full payment of wages after the same shall have been actually earned, and shall be no defense to a libel, suit, or action for the recovery of such wages." The section contains other provisions allowing allotments of wages to the wife, mother, or other relative of a seaman; excepting whaling voyages from its operation, but including foreign vessels; and making the paying of advance wages, or the falsely claiming relationship to a seaman in order to obtain allotted wages, a misdemeanor punishable by fine and imprisonment.

The case is a libel by the second mate, two able seamen, and two ordinary seamen of the bark Samuel E. Spring, for wages earned on a two-months voyage from New York to Havana and Matanzas, and thence to Boston. The libelants were shipped at New York through a shipping master employed by the owners of the bark, in March, 1886, and signed shipping articles, which were produced at the hearing, by which it appeared that the second mate was to receive for the voyage as wages $12 per month, the two able seamen $10 per month each, and the two ordinary seamen $8 per month each. The libelants gave evidence that at the time of their shipment a verbal agreement, differing from that expressed in the shipping articles, was made by them with the shipping agent, by which the monthly rate of wages of the second mate was to be $25, of the able seamen $20, and of the ordinary seamen $16, and each man was to receive one month's pay in advance; and that one month's wages was paid to each man before sailing. On the discharge of the crew in Boston the four seamen were paid their wages as due by the shipping articles, without deduction on acount of the payments made in New York, and signed receipts discharging the vessel, owners, and master from all claims on ac-

count of the voyage. The second mate was offered his wages computed in the same way, but he refused to accept them and demanded the amount due by the verbal contract, without deducting the sum paid him in New York. As the amounts paid to the seamen, and offered to the mate, with the payments in New York added, are exactly the same as the wages would come to if computed according to the verbal contract, the suit, in effect, is to recover over again the wages paid in New York.

That the method resorted to in shipping the libelants was for the purpose of avoiding the stringent provisions of the act of 1884, prohibiting the payment of advance wages to seamen, is apparent from the evidence, and is not seriously denied. The men were to receive, partly in advance and partly at the end of the voyage, the wages verbally agreed upon, and shipping articles were signed making no provision for advances, but showing a rate of wages which, with the sums advanced, gave the men what they were entitled to have by the oral agreement. There can be no doubt that this was done with the authority of the owners, and that the arrangement was perfectly understood and assented to by the men.

The owners complain that if a literal compliance with the act is to be exacted, it will be practically impossible to ship crews in our ports; and they ask the court, both in the interest of ship-owners and seamen, to give the act some sort of a construction that will permit expedients of this kind to stand, and thus prevent the disastrous consequences which would otherwise follow. They especially ask for a ruling that in suits of this nature the shipping articles shall be held to be conclusive as between the parties as to the stipulated wages, and cannot be varied by parol evidence.

The rule undoubtedly is that statutes are to receive a reasonable construction, and doubtful words and phrases are to be construed, if possible, so as not to produce mischievous results. But when the words used are plain and unambiguous, there is no room for construction, and nothing is left for the court but to give to them their full effect. The act prohibits, in direct and positive terms, the payment of advance wages to seamen before leaving port, and declares that such payment shall in no case absolve the owner, master, or vessel from full payment of wages, or be a defense to a suit for their recovery, after they are earned. It applies, in terms, to all voyages except whaling voyages. Its prohibition must clearly extend to indirect as well as direct payments. The illegality of the payment was wholly on the side of the owner. It would be absurd, as well as a palpable disregard of the legislative intent, to hold that the law can be evaded by merely having the seamen sign fictitious shipping articles, which do not express the rate of wages actually agreed upon and intended to be paid for the voyage. I am therefore obliged to hold that the second mate can recover his wages according to the verbal contract, without deducting the payment in New York.

But not so as to the other libelants. I see no reason why they should not be bound by their release. The arrangement by which they received advance wages was entered into solely for their benefit. No fraud or imposition has been practiced upon them. They understood what they were about when they were shipped and when they were discharged. They intended by their release to discharge the debt which they are now suing for. They have received all they bargained for, and there is nothing in the nature of the claim that makes it incapable of being released.

A decree is to be entered in favor of John O'Neil, the second mate, for $48.22, and costs. As to all the other libelants the libel is to be dismissed. Ordered accordingly.